IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RICHARD L. VELEMIROVICH, )
)
      Plaintiff, )
)
-vs- )
  Civil Action No. 06-1615
)
JO ANNE B. BARNHART, Commissioner of )
Social Security, )
)
      Defendant. )

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 13 and 17). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 14 and 18). After careful consideration of the submissions of the parties, and for the reasons discussed below, Defendant's Motion (Docket No. 17) is granted and Plaintiff's Motion (Docket No. 13) is denied.

### I. BACKGROUND

Plaintiff has brought this action under 42 U.S.C. § 405(g), for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401-433.

On January 14, 2005, Plaintiff protectively filed the instant application for DIB

alleging disability since November 8, 2004[1] due to a hand injury, arthritis, and knee pain. (R. 53, 90, 93, 94). On or about March 16, 2005, the state agency denied Plaintiff's application. (R. 28-31). Plaintiff requested a hearing. (R. 35). Administrative Law Judge Douglas W. Abruzzo ("ALJ") held a hearing on April 18, 2006, at which time Plaintiff, who was represented by counsel, and a vocational expert testified. (R. 315-78). On May 15, 2006, the ALJ denied Plaintiff's application for benefits, finding that Plaintiff is not disabled under the Act. (R. 15-21). The Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision. (R. 5-7). After thus exhausting his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. Plaintiff raises three main issues on appeal:

> 1. Whether the ALJ erred in failing to include as severe impairments Plaintiff's medically-diagnosed right hand injury, hydrocephalus, and restless leg syndrome. See Pl.'s Br. at 7-12.

> 2. Whether the ALJ erred in concluding that Plaintiff has a residual functional capacity to perform medium work, when there is documented medical evidence that Plaintiff had a permanent restriction of no lifting more than 10-15

---

[1] Although Plaintiff alleges disability from November 2004, he did not stop working (aside from lay offs) until June 2005, at which time he elected to take his employer's retirement pension. (R. 94, 329).

2

pounds.  Id. at 12-13.

3. Whether the ALJ erred by accepting the testimony of the vocational expert that Plaintiff was capable of performing work as a welding supervisor, building maintenance worker, and cleaner, when the requirements of such jobs do not fit within the functional limitations of Plaintiff's medical conditions.  Id. at 13.

I will address each of these issues in turn.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989).  Substantial evidence has been defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. §405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979).   A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.  Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998).  To determine whether a finding

is supported by substantial evidence, however, the district court must review the record as a whole.  See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Brewster v. Heckler,  786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant.  20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity.  20 C.F.R. § 404.1520.  The  claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4).  Dobrowolsky, 606 F.2d at 406.  Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5).  Id.

4

A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

B. <u>WHETHER THE ALJ ERRED IN FAILING TO INCLUDE AS SEVERE IMPAIRMENTS PLAINTIFF'S RIGHT HAND INJURY, HYDROCEPHALUS, AND RESTLESS LEG SYNDROME</u>

First, Plaintiff argues that the ALJ erred at Step 2 of the sequential evaluation process in failing to include as severe impairments diagnosed medical conditions including a right hand injury, hydrocephalus, and restless leg syndrome.  Pl.'s Br. at 7-12.  In support of this argument, Plaintiff states that the medical evidence of record indicates that, due to a 1997 crush injury to his right fifth finger, he has a permanent restriction on the use of his right hand involving no lifting, pushing, or pulling over 10-15 pounds and that the finger at issue is permanently flexed.  Id.  He further argues that his hydrocephalus was medically documented by an MRI and two neurologists and that he requires lumbar punctures to relieve the intracranial pressure.  Id.  Finally, Plaintiff notes that the ALJ did not mention Plaintiff's restless leg syndrome in his decision.  Plaintiff's argument is without merit.

As set forth in 20 C.F.R. § 404.1521(a), an impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities.  The regulations define basic work activities as the abilities or aptitudes necessary to do most jobs.  20 C.F.R. § 404.1521(b).  Thus, an impairment is not severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to perform basic work activities.  Mays v. Barnhart, 78 F. App'x 808, 811 (3d Cir. 2003);

Social Security Ruling 85-28.

In his written decision, the ALJ found that:

> Mr. Velemirovich has a history of a crush injury to his right fifth finger. However, the record does not reflect any operative procedures, hospitalizations, or significant follow-up treatment for this injury during the period in question. Claimant's representative argued that reduced use of the right fifth finger basically rendered the right hand useless. This is certainly not reflected in the record and there is no indication from either treating or examining sources that any restrictions were placed upon the claimant due to this injury.
>
> The claimant has also been treated for hydrocephalus. However, Exhibit 2F indicates that the symptoms flowing from this condition are relieved by occasional lumbar punctures and drainage. In Exhibit 14F, this condition was described as low pressure hydrocephalus. Again neither treating nor examining sources have placed any limitations on the claimant due to this diagnosis.

(R. 17-18). I agree with Defendant that the ALJ's finding that Plaintiff's finger injury and hydrocephalus are not severe is supported by substantial record evidence.

With respect to Plaintiff's right hand injury, the record supports Plaintiff's statement that his doctors originally imposed lifting restrictions of no more than 10 to 15 pounds as a result of that injury. The medical records Plaintiff cites reflecting such restrictions, however, are dated in 2000 and 2001, several years prior to Plaintiff's alleged disability onset date. (R. 265, 288-89). There is no medical documentation of such restrictions during the relevant time period. Moreover, the record evidence supports the ALJ's finding that Plaintiff's demonstrated actual abilities following his injury exceeded such restrictions. In addition to his extensive reported activities of daily living, there is evidence of record that Plaintiff continued

to perform job duties in excess of his reported restrictions despite his injury. For example, Plaintiff worked as a boiler-maker for nine months in 2003, a job in which he reported lifting 50 pounds or less occasionally and 25 pounds frequently. (R. 100-01, 331). Even if Plaintiff's restrictions were permanent, the vocational expert testified that there were many medium exertional jobs available, including door keeper and trimmer, that an individual with Plaintiff's characteristics could perform even factoring in the inability to use one hand up to one-third of the time.[2] (R. 368-71).

There also is substantial evidence of record supporting the ALJ's conclusion that Plaintiff's hydrocephalus was non-severe, i.e., that the condition had no more than a minimal effect on Plaintiff's ability to perform basic work activities. As the ALJ correctly noted, there is no documentation of record from any treating or examining physician placing any restrictions or limitations whatsoever on Plaintiff due to his hydrocephalus. (R. 18). Moreover, the evidence indicates that Plaintiff only had one lumbar puncture during the relevant time period, and that this and the two prior lumbar punctures Plaintiff received were effective in alleviating Plaintiff's alleged symptoms. (R. 18, 135, 139, 142, 190).[3]

Finally, with respect to Plaintiff's restless leg syndrome, there is no medical opinion or documentation from any source in the record reflecting any functional

---

[2] The hypothetical involving the hand restrictions reflected Plaintiff's limitations as characterized by Plaintiff's own attorney. (R. 356-71).

[3] I also note that although the ALJ found Plaintiff's hand injury and hydrocephalus to be non-severe, he did not end his analysis at Step 2 of the evaluation process. Rather, he considered all of Plaintiff's limitations in his later residual functional capacity determination. (R. 18-20).

restrictions on Plaintiff stemming from this condition, let alone evidence that the condition had more than a minimal effect on Plaintiff's ability to perform basic work activities. Thus, the ALJ's failure to mention Plaintiff's alleged restless leg syndrome as a severe impairment in his written decision is not cause for reversal or remand.

For all of these reasons, I find that the ALJ did not err by failing to classify Plaintiff's hand injury, hydrocephalus, and restless leg syndrome as severe impairments.

C. <u>WHETHER THE ALJ ERRED IN FINDING PLAINTIFF CAPABLE OF PERFORMING MEDIUM WORK</u>

Second, Plaintiff argues that plaintiff had a permanent restriction of no lifting more than 10-15 pounds with his right hand and, therefore, that the ALJ erroneously concluded that Plaintiff has the residual functional capacity to perform medium work that entails occasionally lifting and carrying 50 pounds, frequently lifting and carrying 25 pounds, and standing and walking for six hours per workday. Pl.'s Br. at 12-13. I disagree.

As set forth above, Plaintiff's alleged lifting restriction stemmed from his 1997 right-hand injury which limited the use of his right fifth finger. There is no medical evidence supporting a similar restriction on Plaintiff's ability to use his left hand or arm. In addition to the fact that the medical evidence of record regarding Plaintiff's lifting restriction significantly predates his alleged disability onset date, the vocational expert testified that there is a range of medium work that a person with Plaintiff's characteristics could perform even without use of one hand one-third of the time. Moreover, as further described above, there is substantial evidence of

record that Plaintiff actually performed significant medium-level work in the years following his alleged restrictions.

In addition to the lifting issue, Plaintiff also notes that "it is difficult to imagine how an individual with osteoarthritis of his right hand and right knee as well as degenerative disc disease of his cervical and lumbar spines and problems with balance and vertigo related to hydrocephalus, can regularly lift the requirements for medium work or walk and stand for 6 hours in an 8 hour day." Pl.'s Br. at 12-13. Plaintiff's subjective opinion or his "difficulty imagining," however, is insufficient to demonstrate error in this case. Plaintiff has not pointed to any objective evidence of record imposing or supporting any limitations on his ability to walk and/or stand for six hours out of the workday. Further, the only evidence relating to a lifting restriction relates solely to Plaintiff's right hand injury. For the reasons previously set forth, this evidence does not support Plaintiff's argument that he is unable to perform medium work as described by the ALJ.

Because the ALJ's finding that Plaintiff has the residual functional capacity to perform medium work that entails occasionally lifting and carrying 50 pounds, frequently lifting and carrying 25 pounds, and standing and walking for six hours per workday, is supported by substantial evidence, I find no error on this issue.

D. <u>WHETHER THE ALJ ERRONEOUSLY ACCEPTED THE TESTIMONY OF THE VOCATIONAL EXPERT</u>

Third, Plaintiff argues that the ALJ erred because his hypothetical question to the vocational expert did not accurately portray Plaintiff's impairments. Pl.'s Br. at 13. In particular, Plaintiff contends that the ALJ improperly posed a flawed

hypothetical that involved an individual able to do medium work when Plaintiff had a right hand and arm restriction of no lifting over 10-15 pounds. Id. Plaintiff further argues that the hypothetical question failed to note any limitations related to Plaintiff's difficulties with balance, vertigo, and extremity numbness associated with Plaintiff's hydrocephalus; difficulties with walking and standing related to osteoarthritis on his right knee and degenerative disc disease of his neck and back; or daytime tiredness related to restless leg syndrome. Id. I disagree.

It is well-settled that the law only requires the ALJ to include limitations supported by the record in his hypothetical question to the vocational expert. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). Here, the ALJ adequately accounted for Plaintiff's supported limitations by posing a question in which the hypothetical individual was prohibited from use of ropes, ladders, and scaffold, and prohibited from crawling. The hypothetical individual also was limited to no more than occasional kneeling and crouching and no more than occasional pushing and pulling with the lower right extremity. In addition, the individual could not tilt his head back more than occasionally and must avoid prolonged exposure to fumes, odors, dusts, gasses, and poor ventilation. (R. 360-61).

Again, as explained fully in the preceding sections, there is nothing in the record that substantiates Plaintiff's claim that he had any further limitations, including any additional limitations relating to his restless leg syndrome or hydrocephalus. Further, to the extent Plaintiff claims limitations related to his right

hand injury, the record does not support those limitations and, in any event, the vocational expert testified that there are a number of medium jobs that a hypothetical individual could perform even without use of one hand one-third of the time.

Because the ALJ properly considered Plaintiff's limitations supported by the record, and there is no evidence that Plaintiff had additional limitations that were not accounted for by a reduction to less than a full range of medium work as set forth by the ALJ, I find no error on this issue.

### III.  CONCLUSION

In sum, based on the evidence of record, the arguments of counsel, and the briefs filed in support of and in opposition thereto, I conclude that the ALJ properly analyzed Plaintiff's claim and that substantial evidence supports the ALJ's finding that Plaintiff is not disabled within the meaning of the Social Security Act. Accordingly, the ALJ's decision denying Plaintiff's application for disability insurance benefits will be affirmed.


*******************

## **ORDER OF COURT**

AND NOW, this **13th** day of June, 2007, after careful consideration, it is ordered that Defendant's Motion for Summary Judgment (Docket No. 17) is GRANTED. Plaintiff's Motion for Summary Judgment (Docket No. 13) is DENIED.   Judgment is entered in favor of Defendant and against Plaintiff . This case is closed forthwith.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge